OPINION OF THE COURT
Christopher J. McCarthy, J.
Claimant, D.H., failed to establish by a preponderance of the credible evidence that the State of New York disclosed his confidential HIV-related information in violation of article 27-F of the Public Health Law.
Claimant previously moved for summary judgment. The court denied the motion (D.H. v State of New York, Ct Cl, Nov. 8, 2013, McCarthy, J., UID No. 2013-040-074) stating that claimant failed to make a prima facie case as claimant failed to submit proof to establish that the nurse provided information to anyone that “reasonably could identify” him as having been the subject of an HIV-related test. There was no evidence to establish that information provided by the nurse could only have been acquired from someone with HIV.
The Appellate Division, Fourth Department affirmed this court’s decision and order “inasmuch as [CJlaimant failed to establish as a matter of law that the information disclosed satisfies the definition of ‘confidential HIV related information’ ” under the Public Health Law (Dawud H. v State of New York, 122 AD3d 1412, 1412 [4th Dept 2014]).
The parties have requested that the court render a determination, as a matter of law, pursuant to CPLR 3222 (b) on the basis of the stipulated facts set forth below, the memoranda of counsel, and the legal conclusions to be drawn from the facts.
The parties stipulated to the following:
1. On January 21, 2009, claimant was an inmate at Mid-State Correctional Facility. Mid-State is a medium security prison that consists of separate buildings on a campus. Inmates reside in dormitories and participate in programs. Mid-State also has two special housing units (SHU) in which inmates are confined in cells, subject to the provisions of 7 NYCRR chapter VI.
2. On January 21, 2009, and at claimant’s request, he was tested for HIV. The HIV test was conducted by facility nurse Joanne Haley.
3. Claimant was notified that he tested positive for HIV.
4. Following the HIV test claimant met with nurse Joanne Haley. The nurse requested and claimant provided the names *392 of his sexual contacts. Specifically, claimant provided the names of five prisoners at Mid-State with whom he had had sexual contact.
5. The affidavit of Joanne Haley states that claimant provided the names of his sexual contacts pursuant to New York State Department of Corrections and Community Supervision policy and regulation. In addition, Public Health Law § 2781 (5) requires discussion of the need to notify sexual contacts, in the context of post-HIV test counseling.
6. The names of the sexual contacts disclosed by claimant were: A, B, C, D and E.*
7. On the morning of January 22, 2009, claimant was called to the facility medical department for treatment and HIV counseling. In the medical department he met with nurse Nancy Larkin. Nurse Larkin is an infection control nurse. At nurse Larkin’s request claimant identified his sexual partners by providing the same five names he had given to nurse Haley the previous day.
8. A member of the medical staff reported alleged “incidents of sexual misconduct” to security staff. On information and belief, “incidents of inmate sexual misbehavior” refers to claimant’s admission that he engaged in sexual activity with specific identified inmates.
9. On January 22, 2009, nurse Larkin notified Captain Hol-mer that, during a counseling session, claimant identified five prisoners at Mid-State as people with whom he had had sexual contact. The inmates identified as claimant’s sexual partners were A, B, C, D and E.
10. During the afternoon of January 22, 2009, claimant met with Captain Holmer. Captain Holmer showed claimant a piece of paper with the five names he had given to nurse Larkin, and stated he had received the names from nurse Larkin.
11. Claimant acknowledged to Captain Holmer that he had had sexual contact with each of the five individuals named, and he discussed the details of the sexual contact with each of the five people. All of the sexual contact described was consensual.
*393 12. Captain Holmer’s receipt of information from nurse Lar-kin and his interview with claimant is documented in a memorandum dated January 25, 2009.
13. During their interview on January 22, 2009, Captain Holmer represented to claimant that claimant would not be disciplined for the sexual activity that he acknowledged having participated in.
14. Following the interview, claimant was placed in Mid-State’s SHU, in protective custody status.
15. Subsequently, after Captain Holmer’s report was forwarded to the Facility Operations Unit within the Central Office of the Department of Correctional Services, it was decided that those named in the report were to be disciplined, since sexual activity is a violation of inmate disciplinary rules. (The former Department of Correctional Services is now known as the Department of Corrections and Community Supervision.)
16. On January 26, 2009, Captain Holmer wrote a misbehavior report charging claimant with violating rule 101.10, which prohibits sex acts.
17. Claimant was in protective custody status in SHU until the misbehavior report was issued on January 26, 2009. Then, claimant remained in SHU, in disciplinary confinement status.
18. The misbehavior report led to a tier III disciplinary hearing that began on January 30, 2009 and ended on February 2, 2009.
19. At the hearing claimant pleaded “guilty with an explanation” to the single charge of sex offense. The explanation was that although claimant acknowledged having had the alleged sexual activity, he believed the information, including the names of his partners, was confidential, should not have been disclosed beyond the facility medical department, and should not have been used to discipline him.
20. At the conclusion of the hearing claimant was found guilty, and a penalty including three months’ confinement in SHU was imposed, running from February 2, 2009 to May 2, 2009.
21. Shortly after the conclusion of the hearing claimant was transferred from Mid-State to Southport Correctional Facility to serve the balance of his SHU penalty. Southport is a maximum security, disciplinary facility where the entire inmate population is in solitary confinement in SHU, with the exception of a small cadre of inmates engaged in facility maintenance tasks.
*394 22. Claimant filed a facility grievance at Mid-State alleging that confidential information he disclosed after he was tested for HIV was improperly disclosed, and that as a result, he received a misbehavior report and a hearing disposition of 90 days SHU and six months’ recommended loss of good time.
23. The grievance was forwarded to the facility’s nurse administrator, JoAnn Harris, for response. Ms. Harris’response to the grievance was, “[I]f the information you pass along goes against the inmate handbook that you are given, then this information has to be passed along to security. Your HIV testing and results were not passed along but what you were involved in was.”
24. Through counsel, claimant submitted a “Complaint for Alleged Violation of Article 27F” to the New York State Department of Health AIDS Institute.
25. Claimant’s AIDS Institute complaint was referred to Maureen Boll for investigation and response. Ms. Boll was at that time Deputy Commissioner and Counsel for the New York State Department of Correctional Services. The response to claimant’s AIDS Institute complaint came in the form of a three-page letter from Ms. Boll dated September 18, 2009.
26. The parties, through their undersigned counsel, believe that the material facts are fully and accurately presented above, and are not in significant dispute. The parties therefore request that the court render a determination, as a matter of law, pursuant to CPLR 3222 (b), on the basis of the facts stipulated above, and memoranda from counsel on the legal conclusions to be drawn from the undisputed facts.
Claimant’s counsel states in his memorandum of law that claimant does not contend that nurse Larkin explicitly disclosed his HIV status or that he had been tested for HIV (claimant’s mem of law at 8). Counsel further states, however, that
“[i]nformation ‘reasonably could identify’ a person as having HIV or AIDS, or as having been tested for HIV, if the information supports a reasonable inference that an individual has one of the listed conditions. Here, the information that Nurse Lar-kin disclosed to Captain Holmer is ‘confidential HIV related information’ in that it ‘reasonably could identify’ Claimant as a person who was the subject of an HIV test.” (Id. at 9.)
*395 Public Health Law § 2780 (7) provides:
“As used in this article, the following terms shall have the following meanings: . . .
“7. ‘Confidential HIV related information’ means any information, in the possession of a person who provides one or more health or social services or who obtains the information pursuant to a release of confidential HIV related information, concerning whether an individual has been the subject of an HIV related test, or has HIV infection, HIV related illness or AIDS, or information which identifies or reasonably could identify an individual as having one or more of such conditions, including information pertaining to such individual’s contacts.”
The court has reviewed and considered the submitted stipulated facts and finds that, as on his prior motion for summary judgment, claimant has failed to establish by a preponderance of the credible evidence that the information nurse Lar-kin provided to Captain Holmer constitutes “confidential HIV related information” that “reasonably could identify” claimant as having HIV infection, HIV-related illness, or AIDS (hereinafter, collectively, HIV), or having been the subject of an HIV-related test. There has been no evidence presented to establish that the information provided could only have been acquired from someone with HIV, or who had been subjected to an HIV-related test, or that an inference should be drawn by the court that such was the case.
Claimant improperly conflates having been identified as engaging in sexual contacts with other inmates with having HIV, or having been the subject of an HIV-related test. To the court’s mind, the two are distinguishable. It is beyond cavil that an inmate may have had sexual contacts with other inmates without having HIV, or that an inmate might have a sexually transmitted disease other than HIV. Thus, being identified as having engaged in such contacts in no way infers anything with respect to whether or not that person has HIV.
Claimant’s counsel knows of no other statutory scheme that requires a counseling session that must include a discussion of an individual’s sexual contacts (claimant’s mem of law at 10). Thus, he argues that the reasonable inference is that the counseling session referenced by nurse Larkin was post-HIV test counseling required by Public Health Law § 2781 (5) and that the information disclosed was “confidential HIV related *396 information” {id.). The court disagrees, however, and notes that the stipulated facts agreed to by the parties do not state that the only time an infection control nurse or other member of the facility’s medical staff might have occasion to discuss an individual’s sexual contacts is in connection with HIV testing.
Moreover, and regardless of any statutory requirement, to the court’s mind, there could be many instances in which facility medical staff, including, specifically, an infection control nurse, might legitimately wish to discuss the sexual contacts had by an inmate with a sexually transmitted disease other than HIV. Thus, the court concludes that other possible explanations for nurse Larkin counseling claimant about his sexual contacts have not been rendered sufficiently remote as to permit the inference he seeks in this instance (see Spett v President Monroe Bldg. & Mfg. Corp., 19 NY2d 203, 205 [1967]; Prince, Richardson on Evidence § 4-303 [Farrell 11th ed 1995]).
In this instance, nurse Larkin properly provided information to the security staff that claimant was involved in sexual contacts with other inmates, activity that is prohibited by prison regulations. It simply does not follow that, in doing so, she also was releasing information that reasonably could identify claimant’s HIV status, or that he had been the subject of an HIV-related test. Moreover, the record does not support a conclusion that claimant was discriminated against or punished, because he has HIV. Rather, he was disciplined for having violated prison regulations that prohibit inmates, regardless of their HIV status, from engaging in sexual activity (even consensual activity) with each other.
Claimant failed to establish his claim by a preponderance of the credible evidence.

 While the parties included the names of the inmates in their stipulation, the court has elected to identify them by the letters A, B, C, D and E, respectively, in order to protect their identies. The court earlier directed that the caption of this claim be changed to “D.H. v State of New York” for the same reason.